IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

UNITED STATES OF AMERICA )
)
v. ) Criminal No. 3:09CR138-HEH
)
LINWOOD PAGE, JR., )
)
Defendant. )

## MEMORANDUM OPINION
(Government's Motion to Reconsider)

This case arises from a routine traffic stop in the City of Richmond. The legality of the search that ensued turns on a close examination of the teachings of the United States Supreme Court in the recently-decided case of *Arizona v. Gant*, 129 S. Ct. 1710 (2009). Both the Defendant and the United States have filed memoranda in support of their respective positions. The Court heard evidence and oral argument on December 9, 2009. At the close of the hearing, the Court announced that careful application of the holding in *Gant* to the specific facts of this case compelled suppression of the firearm seized from Defendant's vehicle.

The United States has now filed a motion to reconsider the Court's ruling. Supplemental memoranda have been filed by both parties, and additional oral argument was heard on December 22, 2009. Although such motions should be sparingly granted, the novelty of *Gant* and scarcity of interpretive cases justify further review.[1]

---

[1] The decision to entertain a motion to reconsider its ruling on a Fourth Amendment issue prior to final judgment in the case resides within the sound discretion of the trial court. *United*

The search at issue resulted from a traffic stop that occurred on February 12, 2009, on West Franklin Street and Harrison Street in the City of Richmond. Officers D.D. Melton and Henry S. Johnson recognized the Defendant's vehicle as it passed their location. The officers had encountered the Defendant on several prior occasions. Approximately one month prior, the officers arrested the Defendant on an outstanding warrant. Incident to that arrest, they recovered a realistic-appearing handgun replica. Although initially appearing to be a firearm, the replica was later determined to be a cigarette lighter. During that encounter, the officers learned from the Virginia Department of Motor Vehicles that the Defendant's driver's license was suspended. The officers warned him to cease driving until his license had been reinstated. During this general time frame, Officer Johnson testified that he learned the Defendant was a possible suspect in a robbery and that he had been questioned by detectives. (Tr. 59-60.) Officer Johnson had also heard that the Defendant may "mess around with drugs." (Tr. 59.)

Three or four days prior to February 12, 2009, Officers Melton and Johnson again observed the Defendant driving a 1996 Cadillac. Inquiry with the DMV database indicated that the Defendant's operator's license was still suspended. After a stern admonition, the officers released the Defendant with a warning.

Prior to stopping the Defendant on February 12, 2009, the officers confirmed the status of his operator's license using their in-car computer system. DMV records

---

*States v. Dickerson*, 166 F.3d 667, 677-78 (4th Cir. 1999).

revealed that his license remained suspended. Upon stopping his vehicle, the Defendant was arrested, handcuffed, and escorted to the rear of his vehicle.

The Defendant was searched by Officer Melton incident to his arrest for driving on a suspended operator's license. In his left front pocket, Officer Melton located two small individually wrapped baggies containing marijuana and some rolling materials. The Defendant was then informed that he was also under arrest for possession of marijuana, and Officer Melton recited *Miranda v. Arizona* warnings to the Defendant. In his testimony, Officer Johnson described the seized marijuana as two small bags about the size of a quarter. In his view, the quantity was consistent with personal use, and the Defendant had all the associated smoking accessories needed for use in his pocket. (Tr. 62.)

Recalling the handgun replica seized one month prior and knowing that the Defendant was a possible suspect in an armed robbery, Officer Johnson, almost concurrently with Defendant's arrest, conducted what he described as a protective sweep of the Cadillac. In his testimony, Officer Johnson added that it was also possible that the Defendant could eventually be allowed to return to the car. (Tr. 48.) During the search, a silver and black Ruger .22 caliber semi-automatic pistol was found under the front seat. Officer Johnson was unaware at the time that his partner had discovered marijuana in Defendant's pocket.[2]

---

[2]Because Officers Johnson and Melton were working in tandem, each officer's knowledge is imputed to the other. *Illinois v. Andreas*, 463 U.S. 765, 771 n.5, 103 S. Ct. 3319,

A more thorough search of Defendant's vehicle was subsequently conducted by Officer Johnson, who believed "that there could possibly be more drugs in the vehicle." (Tr. 15, 48-49.) The vehicle operated by the Defendant was neither impounded nor inventoried. The officer ultimately released the Cadillac to the owner of record.

Following his indictment by a federal grand jury for possession of a firearm by a prior convicted felon, this motion to suppress evidence was filed. The Defendant challenged the search of his person and vehicle on a number of fronts. First, he contended that Officers Melton and Johnson had neither reasonable suspicion nor probable cause to stop his vehicle on February 12, 2009. Assuming the stop was lawful, the Defendant argued at the suppression hearing that the ensuing search violated the restrictions on vehicle searches incident to arrest articulated by the U.S. Supreme Court in *Arizona v. Gant*. In *Gant*, the Court noted that "[i]f there is no possibility that an arrestee could reach into the area that law enforcement officers seek to search, both justifications for the search-incident-to-arrest exception [officer protection and safeguarding evidence] are absent and the rule does not apply." *Gant*, 129 S. Ct. at 1716. According to the Defendant, since he was in handcuffs at the time the officers entered his vehicle, there was no legal justification warranting a protective sweep or search incident to arrest.

On the other hand, the United States maintains that the initial vehicle stop was based on probable cause to believe that the Defendant was operating a motor vehicle on a

---

3325 n.5 (1983); *Whiteley v. Warden*, 401 U.S. 560, 568, 91 S. Ct. 1031, 1037 (1971); *United States v. Nafzger*, 974 F.2d 906, 911 (7th Cir. 1992).

4

suspended license. Furthermore, the government argues that a protective sweep of the vehicle was justified since the officers had reasonable suspicion that criminal activity was afoot. This was presumably predicated on the prior seizure of the handgun-shaped cigarette lighter and the information Officer Johnson had received about the Defendant being a person of interest in connection with a robbery.[3]

Alternatively, the United States suggests that the search in this case falls outside of the restrictive language in *Gant*. Because this case involved an arrest for controlled substances, the attending circumstances made it "reasonable [for the officers] to believe evidence relevant to the crime of arrest might be found in the vehicle." *Id.* at 1719 (internal citations omitted). In the government's view, the sequence of seizures was of no moment, because the firearm in the vehicle would have been inevitably discovered during a lawful search following the Defendant's arrest for possession of marijuana. *See Murray v. United States*, 487 U.S. 533, 537 (1988); *United States v. Mobley*, 40 F.3d 688, 693 (4th Cir. 1994).

Based on the information communicated to the officers concerning the suspended status of the Defendant's driver's license, there was unquestionably probable cause to stop and arrest the Defendant on February 12, 2009, and the Court so held. *See United States v. Kellam*, 568 F.3d 125, 136 (4th Cir. 2009). Under Va. Code Ann. § 46.2-301 (2009), it is a Class 1 misdemeanor to operate a motor vehicle while a person's privilege

---

[3]In its motion for reconsideration, the government revised its position and argued that the search was predicated on probable cause.

5

to drive is suspended or revoked.

While Officer Melton was searching the Defendant incident to his arrest for operating a motor vehicle on a suspended operator's license, Officer Johnson conducted what was characterized as a "protective sweep" of the vehicle. A protective search of a vehicle is permissible where police reasonably believe a suspect may be dangerous and that there may be readily-accessible weapons in his vehicle. Such searches have been long recognized by the United States Court of Appeals for the Fourth Circuit "provided the police harbor a reasonable belief that the suspect may gain access to the vehicle at a time when that access would endanger the safety of the officers conducting the stop or of others nearby--including the reasonable belief that the suspect will return to the vehicle following the conclusion of the *Terry* stop." *United States v. Holmes*, 376 F.3d 270, 280-81 (4th Cir. 2005), *cert. denied*, 535 U.S. 1011 (2005); *see also Michigan v. Long*, 463 U.S. 1032, 1049-52 (1983).

The scope of permissible search is even wider when the occupant of a vehicle is lawfully arrested. In *New York v. Belton*, 453 U.S. 454, 101 S. Ct. 2860 (1981), the United States Supreme Court held "that when a police officer has made a lawful custodial arrest of an occupant of an automobile, the Fourth Amendment allows the officer to search the passenger compartment of that vehicle as a contemporaneous incident of arrest." *Thornton v. United States*, 541 U.S. 615, 617, 124 S. Ct. 2127, 2129 (2004). This search authority was extended even further in *Thornton* where the Court concluded

that "*Belton* governs even when an officer does not make contact until the person arrested has left the vehicle." *Id.* The scope of search authorized in *Belton* and *Thornton* are central to the rationale underlying *Gant*.

On April 21, 2009, two months after the search at issue, the United States Supreme Court decided *Arizona v. Gant*.[4] In *Gant*, the Court concluded that "the generalization underpinning the broad reading of [*Belton*] is unfounded." *Gant*, 129 S. Ct. at 1723. In a five to four decision, the Court held "that *Belton* does not authorize a vehicle search incident to a recent occupant's arrest after the arrestee has been secured and cannot access the interior of the vehicle. . . . [W]e also conclude the circumstances unique to the automobile context justify a search incident to arrest when it is reasonable to believe that evidence of the offense of arrest might be found in the vehicle." *Id.* at 1714 (internal citations omitted).

An instructive element in Justice Stevens' analysis for the Court in *Gant* was the distinction between traffic violations and drug offenses. Justice Stevens observed that "[i]n many cases, as when a recent occupant is arrested for a traffic violation, there will be no reasonable basis to believe the vehicle contains relevant evidence. But in others, including *Belton* and *Thornton*, the offense of arrest will supply a basis for searching the passenger compartment of an arrestee's vehicle and any containers therein." *Id.* at 1719

---

[4]Under *Griffith v. Kentucky*, 479 U.S. 314, 107 S. Ct. 708 (1987), the decision in *Gant* applies retroactively to all state and federal cases not yet final. *Griffith*, 479 U.S. at 318, 107 S. Ct. at 710-11.

7

(internal citations omitted). *Belton* and *Thornton* were both cases involving arrests for drug offenses.

Although the term "reasonable to believe" is certainly not new to Fourth Amendment jurisprudence, its application to the rule announced in *Gant* is less clear. *See Gant*, 129 S. Ct. at 1726, 1731 (Alito, J., dissenting, joined by Roberts, C.J., Kennedy, and Breyer, J.J.). As the dissenting Justices in *Gant* noted, the more nebulous standard adopted by the majority appears to sow the seeds of confusion rather than provide clear guidance to courts and law enforcement officers. *Id.* It is logical to assume that the Court's choice of words was carefully chosen and hence distinguishable from the more familiar standards of probable cause, articulable suspicion, or totality of the circumstances.

Turning to the analogous cases relied upon by the majority in *Gant* to clarify its ruling, *Belton* involved a random traffic stop on the New York Freeway. The officer immediately smelled burnt marijuana and observed an envelope containing suspected marijuana on the floor. The occupants were arrested for possession of marijuana and the passenger compartment of the vehicle searched, yielding a quantity of cocaine. *Belton*, 453 U.S. at 456, 101 S. Ct. at 2861-62. Under the law of the Fourth Circuit, the smell of burnt marijuana alone provided "reasonable cause" to search the vehicle. *See United States v. Humphries*, 372 F.3d 653, 659-60 (4th Cir. 2004).

Similarly, the search at issue in *Thorton* evolved from a traffic stop. After

observing the defendant operating an improperly registered vehicle, an officer pulled in behind him in a parking lot. As the defendant began walking away, the officer approached, advised him that his tags did not match his car, and requested to see his driver's license. The defendant was conspicuously nervous. Concerned for his safety, the officer asked the defendant if he could pat him down. The defendant consented after admitting that he had illegal narcotics in his pocket. The officer discovered two bags of marijuana and a large amount of crack cocaine. Thornton was then arrested, handcuffed, and placed in the rear of a police vehicle.

Incident to arrest, the officer in *Thornton* then searched the interior of the defendant's automobile and found a 9 mm handgun under the front seat. Relying on *Belton*, and striving to set forth a clear rule for police and citizens alike, the Supreme Court reiterated that a law enforcement officer may search the passenger compartment of a vehicle incident to a lawful custodial arrest of both occupants and recent occupants. *Thornton*, 541 U.S. at 621, 124 S. Ct. at 2131.

Concerned that the generalized bright line rule announced in *Belton* may have opened the door too widely, the Court in *Gant* narrowed its boundaries. In doing so, the Court adopted the limiting language suggested in Justice Scalia's concurrence in *Thornton*, authorizing such searches when "it is reasonable to believe evidence of the offense of arrest might be found in the vehicle." *Id.* at 632, 124 S. Ct. at 2137 (Scalia, J., concurring). The Court in *Gant* pointed to the facts in *Belton* and *Thornton*, both drug

9

cases, as examples of instances where "an evidentiary basis for the search" was present. *Gant*, 129 S. Ct. at 1719. Presumably, the "evidentiary basis" referred to was a reasonable basis to believe the vehicle contained evidence relevant to the offense of arrest.

Focusing closely on the facts of *Belton* and *Thornton*, aside from their common traffic stop genesis, each involved the seizure of controlled substances from the vehicle occupant. *See also United States v. Davis*, 569 F.3d 813, 817 (8th Cir. 2009).

At the close of the initial hearing on the Defendant's motion to suppress, this Court concluded that the circumstances at hand did not justify a protective sweep of the interior of the vehicle[5] and that the United States had failed to demonstrate a reasonable basis to believe that the Defendant's vehicle contained relevant evidence. Accordingly, the Court granted the Defendant's motion to suppress. The immediate motion for reconsideration followed, accompanied by a memorandum discussing in far greater detail the operative language of *Gant* and the scant interpretive cases. The Defendant has similarly responded. On further review, this Court is of the opinion that its initial application of the rule in *Gant* was incorrect.

As the dissent in *Gant* notes, the rule announced by the majority is far from pellucid. Their objective was obviously to limit the scope of searches permissible

---

[5]The circumstances justifying a protective sweep in this case were marginal. Given the Court's decision on alternative grounds, it need not decide the issue of whether there was independent probable cause for the search.

10

incident to the arrest of the operator of a motor vehicle in situations where the operator is in custody and has no access to the vehicle. Of particular concern to the Court were cases in which an occupant is arrested for a traffic violation without any other reasonable basis to believe the vehicle contains relevant evidence. *Gant*, 129 S. Ct. at 1719. The Court, however, went further, "[b]ut in others, including *Belton* and *Thornton*, the offense of arrest will supply a basis for searching the passenger compartment of the arrestee's vehicle and any containers therein." *Id*. By way of further explanation, the Court added "[w]hereas Belton and Thornton were arrested for drug offenses, Gant was arrested for driving with a suspended license--an offense for which police could not expect to find evidence in the passenger compartment of Gant's car." *Id*.

On closer examination, it would appear that the majority in *Gant* distinguishes between offenses for which it is unlikely that the arrestee's vehicle contains relevant evidence, i.e., traffic violations, and offenses for which the recovery of such evidence is likely. The Court in *Gant* specifically cited drug offenses as illustrative of the exception to the rule announced. Accordingly, under the rationale in *Gant*, the seizure of a quantity of marijuana from the defendant, standing alone, justified the search of the passenger compartment of his vehicle. *See also United States v. Johnson*, 383 F.3d 538, 545 (7th Cir. 2004).

Although somewhat unsettled, this position appears to be consistent with the

majority of other courts interpreting *Gant's* holding.[6]

The search of the Defendant's vehicle in this case was appropriate irrespective of the sequence of events. Even if the initial protective sweep during which the firearm was seized was improper, the subsequent, more comprehensive search for evidence was permissible under the collective teachings of *Belton*, *Thornton*, and *Gant*. The seizure of marijuana from the Defendant triggered the exception to the rule announced in *Gant* and provided independent grounds for the search of the passenger compartment of the vehicle. The weapon would have been inevitably discovered during the subsequent search for "more drugs in the vehicle." (Tr. 15, 48-49.) *See Murray v. United States*, 487 U.S. 533, 537 (1988); *Nix v. Williams*, 467 U.S. 431, 444 (1984).

Accordingly, the Government's Motion to Reconsider is granted and the

---

[6]In several unpublished opinions, the Fourth Circuit appears to have adopted a similar analysis. *Compare United States v. Joy*, Nos. 07-5101, 07-5102, 07-5104, 07-5105, 2009 WL 1918977 (4th Cir. July 2, 2009) (drug offenses are types of offenses for which it may be reasonable to believe evidence relating to the crime may be located in the vehicle) *with United States v. Megginson*, No. 07-4149, 2009 WL 2461856 (4th Cir. Aug. 12, 2009) (arrest for domestic abuse did not justify search) *and United States v. Majette*, No. 08-4427, 2009 WL 1154270 (4th Cir. Apr. 30, 2009) (arrest for suspended operator's license did not warrant search).

Defendant's Motion to Suppress is denied.[7]

An appropriate Order will accompany this Memorandum Opinion.

                                                    /s/
                                    Henry E. Hudson
                                  United States District Judge

Date: Dec 25, 2005
Richmond, VA

---

[7] The government also suggests that even if the search of Defendant's vehicle was unlawful, a reasonable extension of the good faith exception to the exclusionary rule should be adopted in cases where law enforcement officers relied on the previous bright line rule in *Belton*. Given the Court's ruling, there is no need to reach this issue.